[No. 2209, July 17, 1918.]
## STATE v. YBARRA.

### SYLLABUS BY THE COURT.

1. Deliberation and premeditation, intent to kill, and other elements of murder in the first degree, may be shown, like other facts, either by direct proof or by circumstances from which their existence may be inferred. Evidence examined, and held to sustain verdict of murder in the first degree.　　　　　　　　　　　　　　　　　　　　P. 415

2. Where the capacity of a witness is questioned on account of immature years and a preliminary examination touching his competency is allowed by the trial court, at the conclusion of which the court expresses the opinion that the child is too young to testify, but thereafter upon the request of the state it permits such child to testify, it is to be presumed that the trial court exercised the discretion conferred by section 2165 Code 1915, and that the court adjudged the witness to be prima facie competent to testify, although the court permitted such testimony to be given subject to the right to strike the same from the jury.　P. 417

3.   The fact that a child states in express terms that he does not understand the nature of an oath is not of itself sufficient ground for his exclusion as a witness, where it clearly appears that the child has sufficient intelligence to understand the nature of an oath and to narrate the facts accurately, and knows that it is wrong to tell an untruth and right to tell the truth, and that if he told an untruth he would be punished, and from other facts, that he is in fact competent.                                    P. 420

4.   In a capital case it is essential that defendant be asked by the court, before judgment is passed, whether he has anything to say why sentence of the court should not be pronounced upon him.   And, where it does not affirmatively appear from the transcript of record that such inquiry was made of the defendant at the time of sentence, the judgment will be reversed; but a reversal on these grounds only affects the sentence and judgment and leaves the verdict and precedent proceeding in full force and effect.

P. 420

Appeal from District Court, Grant County; Ryan, Judge.

Pablo Ybarra was convicted of murder in the first degree, and he appeals.   Remanded, with instructions as to the entry of judgment and sentence upon the verdict.

A. B. Renehan and Carl H. Gilbert, both of Santa Fe, for appellant.

Mere fact that defendant killed another does not prove deliberation and premeditation.

Terr. v. Baca, 11 N. M. 559; State v. Lane, 64 Mo. 319; People v. Gibson, 17 Cal. 283; Farrar v. State, 42 Tex. 265; State v. Silk, 145 Mo. 240; McDaniel v. Comm., 77 Va. 281; Wharton on Homicide, Sec. 149.

If witness does not understand nature and obligation of oath, he is not qualified to testify.

Sec. 2165, Code 1915; Terr. v. DeGutman, 8 N. M. 92; Curtis v. Strong, 4 Day 56; Clinton v. State, 33 Oh. St.

State v. Ybarra, 24 .N. M. 413.

33; Miles v. U. S., 103 U. S. 304; Mills v. Cook, 57 S. W. 81; Weeks v. State, 94 Atl. 774; 40 Cyc. 2239.

The allocutus was omitted and this is fatal.
Terr. v. Herrera, 11 N. M. 129.

C. A. HATCH, Assistant Attorney General, for the State.

In courts of general jurisdiction details of trial are presumed to be regular.
Terr. v. Webb, 2 N. M. 147.

No objection was made to lack of allocutus.

Court will not review discretion.of trial court in permitting child to testify except to ascertain whether that discretion has been abused.
State v. Armijo, 18 N. M. 262.

### OPINION OF THE COURT.

ROBERTS, J.  Appellant was convicted of murder in the first degree, and appeals.  Counsel who represented him in the court below, by appointment, having enlisted in the United States Army, this court requested Hon. A. B. Renehan of Santa Fe to brief the case in this court.  In this work he was assisted by Carl H. Gilbert, also of Santa Fe.

Counsel argue that the judgment should be reversed on three grounds: First, because there was no evidence from which it could be properly inferred that the homicide was either premeditatedly or deliberately committed; second, that the court erred in permitting the district attorney to examine the witness Francisco Torres as to the facts at issue in the case and in refusing to withdraw that testimony from the jury; and, third, because the record does not show affirmatively the allocutus.

[1]  The first point made requires a statement of the facts as presented by the evidence for the state.  The

jury having found the appellant guilty of murder in the first degree, its action must be sustained unless there is an absence of evidence showing directly, or circumstantially, premeditation and deliberation. The evidence on behalf of the state shows that the defendant went to the home of the deceased, Sarah Lemos, with whom, apparently, he had prior thereto been living, although the parties were not married to each other. The deceased was living in a house with another woman; each, however, having separate apartments. He first went to the door of the apartment occupied by Mrs. Barela and asked for the deceased. He wanted to go through her room, but the witness would not allow him to do so and told him to go around the house. Mrs. Barela then went into the kitchen and told the deceased that Pablo, the accused, was calling her. Accused called the deceased, who first refused to go outside, but stood in the door and talked to him. After talking with accused for a short time, deceased went back into the room after her shawl, and Mrs. Barela told her not to go out; that Pablo was going to hurt her, but deceased replied that she thought she would go out and make up with him. She put on the shawl, stepped outside the door, and the people in the apartment heard her scream and say, "Don't kill me!" They rushed outside and found her with four or five knife wounds. This, in brief, is the version of the facts testified to by the state's witnesses.

In Wharton on Homicide, 225, the author says:

"Deliberation and premeditation, intent to kill, and other elements of murder in the first degree, may be shown, like other facts, either by direct proof, or by circumstances from which their existence may be inferred. No rule can be laid down as to the character or amount of proof necessary to show deliberation and premeditation; each case must depend upon its own facts. A premeditated design to kill may be inferred from the facts. And that a malicious killing was murder in the first degree may be shown by circumstantial evidence. The question is one for the jury to determine upon a consideration of all the surrounding circumstances tending to show the relations of the parties to each other, and the animus of the accused toward the de-

ceased. Premeditation or other elements of murder in the first degree will not be inferred, however, from the bare fact of killing. Their existence may be inferred from the circumstances, but not presumed; in this sense the words 'inferred' and 'presumed' are not synonymous. Intent to kill and other characteristics of murder in the first degree are matters of fact which cannot be implied as matters of law, but may be inferred from the nature of the weapon used, or from acts of malice which, in the usual course of things, would cause death, or great bodily harm. And in arriving at the intention regard should be had to what transpired at the time of the killing, as well as to what transpired before and after that time. So, in case of assault with intent to kill, the intent is as necessary to be proved as the act itself; but it is unnecessary to prove the specific intent by direct, positive, and independent evidence; it may be inferred from other facts in evidence. And in determining the question as to the existence of intent the jury may take into consideration the previous conduct and declarations of the accused, his temper or disposition, the nature of his acts constituting the assault, the character of the instrument used, and all other circumstances tending to throw light upon the subject."

We think the facts, under the foregoing authority, justified the jury in finding the accused guilty of murder in the first degree.

[2] The second point made is that the court erred in permitting the witness Francisco Torres to testify as a witness for the state. The witness was a child of tender years, and the statute, section 2165, Code 1915, after removing the common-law disqualifications of witnesses, contains the following proviso:

"Provided, however, That the presiding judge, in his discretion, may refuse to permit a child of tender years to be sworn, if, in the opinion of the judge, such child has not sufficient mental capacity to understand the nature and obligation of an oath."

In State v. Armijo, 18 N. M. 262, 135 Pac. 555, it was held that the Supreme Court will not review the discretion of the trial court in permitting a child of tender years to testify, except in a clear case of abuse of discretion.

On his voir dire examination the witness testified that he did not know how old he was; that he knew it was

State v. Ybarra, 24 N. M. 413.

wrong to tell a lie; that he knew it was right to tell the truth, and that he understood when he swore that he was to tell the truth; that he intended to tell the truth, and that he knew what it meant to take an oath. He was then asked what it meant to take an oath and replied that he did not know; that his father had told him what it was, but that he did not remember. He was then asked, "Don't you know what it means when you are telling the truth; do you know whether it it right or wrong?" And he answered, "I know it is right to tell the truth." He was then asked: "When you swore to tell the truth, what does it mean? Does it mean that you will tell the truth or not?" And he answered, "Yes, I am going to tell the truth." And, in answer to further questions, the witness stated that he knew it was wrong to tell a lie and that he had to tell the truth, and that if he did not tell the truth they would put him in jail. Counsel for appellant objected to the witness being allowed to testify. Upon the objection being made, the court said: "I think the child is too young, Mr. Vaught, to testify here." The district attorney then said: "I think I ought to be able to ask him questions as to his ability to testify; why can't I go on with it until it develops, if it does develop, that he is not capable of testifying?" The court then said, "Well, ask him the questions subject to its being ruled out." Thereupon the witness testified in chief, and at the conclusion of the examination by the district attorney defendant moved to strike the testimony. The motion was overruled, and he was then cross-examined by counsel for appellant. At the conclusion of the cross-examination, the motion to strike the testimony was again renewed and overruled.

Counsel for appellant here insists that the court did not decide that the witness was a competent witness upon the testimony given by the witness upon his voir dire examination, but concluded from the voir dire examination that the witness was too young to testify, and then permitted the witness to do so and, upon the conclusion

of his evidence given to the jury, determined that he was competent to testify, basing its ruling upon the testimony given by the witness to the jury and not upon his voir dire examination; that the witness was shown upon his voir dire examination to be prima facie incompetent; and that it was not proper for the witness to testify to the facts in the case to the jury in order to establish his competency and at the same time prove the issue. We think, however, that it must be held that the trial court, when it permitted the district attorney to interrogate the witness as to the facts in the case, determined that the witness was prima facie competent and permitted him to testify, subject to the right to strike out the evidence if it should develop that the witness did not have sufficient understanding to intelligently portray the facts and understand the nature and character of an oath. This must have been the view of the trial court, for it directed the district attorney to proceed with the examination of the witness, subject to the right to have the testimony stricken. If the court had determined, after the testimony was in, that the child was too young to testify, a serious question might have arisen as to allowing the evidence to be presented to the jury. In such a case, it might be argued that the testimony given by the child was prejudicial and that the prejudice could not be cured by the withdrawal of the testimony. Here, however, the court permitted the evidence to remain for the consideration of the jury and held that the child was competent to testify. Where the capacity of a witness is questioned on account of immature years and a preliminary examination touching his competency is allowed by the trial court, at the conclusion of which the court expresses the opinion that the child is too young to testify, but thereafter upon request of the state it permits such child to testify, it is to be presumed that the trial court exercised the discretion conferred by section 2165, Code 1915, and that the court adjudged the witness to be prima facie competent to testify, although the court permitted

such testimony to be given subject to the right to strike the same from the jury. Hence the single question here is whether the evidence on the voir dire examination demonstrated the incompetency of the witness and an abuse of discretion on the part of the trial court in permitting him to testify.

[3] The fact that a child states in express terms that he does not understand the nature of an oath is not of itself sufficient ground for his exclusion as a witness, where it clearly appears that the child has sufficient intelligence to understand the nature of an oath and to narrate the facts accurately, and knows that it is wrong to tell an untruth and right to tell the truth, and that if he told an untruth he would be punished, and, from other facts, that he is in fact competent. 7 Ency. of Evidence, 274. In Williams v. United States, 3 App. D. C. 335, the cout said:

"Courts of justice should regard substance, not words. A child that has an adequate sense of the impropriety of falsehood does understand the nature of an oath in the proper sense of the term, even though she may not know the meaning of the word 'oath' and may never have heard that word used."

The voir dire examination of the witness in question demonstrated his competency and justified the trial court in permitting him to testify. Hence it follows that there was no error on the part of the trial court in this regard.

[4] The allocutus was omitted at the time of passing sentence. This was held by the territorial Supreme Court, in the case of Territory v. Herrera, 11 N. M. 129, 66 Pac. 523, to be a fatal defect in so far as the sentence is concerned. In that case it was said:

"At common law it was deemed essential in capital cases that this inquiry be made of the defendant before sentence, thus giving him an opportunity to allege any ground in arrest, or to plead a pardon if he had obtained one, or to urge any legal objections to any further proceedings against him, and that the defendant might be identified by the court as the real party adjudged to be guilty. This

privilege was deemed to be of such substantial value to the accused that the judgment would be reversed if the record did not affirmatively show that it was accorded to him."

It is argued on behalf of the state that in an earlier case, Territory v. Webb, 2 N. M. 147, it was held not error for the court to omit to ask, before pronouncing final judgment, whether the prisoner had anything to say why sentence should not be pronounced against him, especially where the omission does not appear affirmatively from the record but is only presumed from the fact that the record is silent as to such question. The later case, however, is supported by abundant authority, and we believe correctly states the law; but, as no error occurred upon the trial, the only error being in the failure to ask defendant if he had anything to say to why sentence should not be pronounced upon him, the cause will be remanded upon that ground only; and the trial court should enter judgment and sentence upon the verdict rendered, having the prisoner before the court at the time and inquiring, before pronouncing sentence, if he has anything to say why it should not be pronounced.

The cause will therefore be remanded, with instructions to the court below to proceed as above indicated, and it is so ordered.

HANNA, C. J., and PARKER, J., concur.