334 P.2d 1104

STATE of New Mexico, Defendant-in-Error,

v.

Milton Carl JUSTUS, Plaintiff-in-Error.

No. 5897.

Supreme Court of New Mexico.

Jan. 28, 1959.

Rehearing Denied Feb. 18, 1959.

O. Russell Jones, Jack Smith, Santa Fe, for plaintiff in error.

Fred M. Standley, Atty. Gen., Robert F. Pyatt, Fred M. Calkins, Jr., Asst. Attys. Gen., for defendant in error.

CARMODY, Justice.

The appellant (hereafter called the defendant) was convicted of first degree murder. The trial jury recommended clemency and thereafter the defendant was given a life sentence in the penitentiary. The circumstances of the offense were that on January 8, 1954, the deceased, Edward G. Meyer, and the defendant appeared at the Tucumcari General Hospital in Tucumcari, New Mexico, and the deceased was given a shot of penicillin because he had a cold. At that time, deceased was dressed in the uniform of the Armed Forces of the United States. Subsequently, the two men registered at a motel in Tucumcari, the deceased paying for the same, and at the time of registering the deceased asked for a water bottle and was furnished an empty wine bottle for this purpose. The car belonging to deceased, being driven by the defendant, was backed into the space provided for it in the motel and the two men entered the room. The next morning, it was discovered that one of the beds was smeared with blood, with fragments of the wine bottle both on the bed and on the floor nearby. On this same bed there was a pillow with an indentation of where a head had apparently been, covered with blood and chips of glass. The rest of the room was in comparatively good order, except that the other bed showed signs of having been slept in. About noon on January 9th, the defendant was next seen in Miami, Texas, and the service station operator noticed a soldier lying in the automobile with blood on his clothing and face. Shortly thereafter, the defendant drove to Canadian, Texas, and there, in company with a Texas sheriff, took the deceased to the

hospital. The deceased was taken to the emergency room and died at about 4:00 o'clock that afternoon. The defendant gave varying stories as to the circumstances to the Texas officers, first saying that he found the deceased by the road, later that he had hit him over the head while he was sleeping in the car near Amarillo, and finally stating that he and the deceased had got into a fight in the motel in Tucumcari and that he had hit the deceased over the head with a whiskey bottle. The defendant also originally stated that the car was his, although he later said it belonged to the deceased, and there was some testimony with respect to the defendant originally claiming that he was the deceased. According to the defendant's final statement to the officers, the argument in Tucumcari was over the Korean War and World War II and about which was the toughest, and that, after the fight the defendant and deceased decided that they should leave the motel before the proprietor saw the damage and the blood and the tearing up of the room, and that in this way they would not have to pay for the same. It was also testified that the deceased came to his death by reason of a fractured skull and resulting hemorrhage causing pressure upon the brain, and that by reason of the type of the injury that the same would have caused unconsciousness for a short period thereafter perhaps some type of lucid interval, followed by unconsciousness and then death.

In addition to the car, there was found in the defendant's possession some of the property of the deceased, including some traveler's checks which were found in the defendant's shoe after he had been returned to Tucumcari.

The information filed in the case charged the defendant with the crime of murder. Subsequently, there was a bill of particulars filed which alleged:

"The State's theory of the case is that the defendant killed Edward G. Meyer while perpetrating a felony, to-wit: Robbery of Edward G. Meyer."

The defendant seeks a reversal of his conviction, first, on the ground that the trial court failed to properly instruct the jury; secondly, on the ground that the trial court erroneously instructed the jury as to second degree murder and voluntary manslaughter; and, lastly, that the conviction is not supported by substantial and competent evidence.

The trial court in its instructions to the jury gave them the basic instructions on common law murder in the first degree, the second degree, and manslaughter. In addition, and at the defendant's own request, the court gave the following instruction:

"17½. You are further instructed that if you are convinces ty the testimony and beyond a reasonable doubt that the Defendant struck the blow which caused the death of the deceased, Edward G. Meyer, and you should be further convinced by the testimony and beyond a reasonable doubt that the

Defendant did rob the deceased, Edward G. Meyer, then in such event you should not find the Defendant guilty of murder unless you are further convinced by the testimony and beyond a reasonable doubt that at the time the blow which caused the death of the said Edward G. Meyer was struck, the Defendant had already formed the design to rob the deceased, Edward G. Meyer, and that such blow was struck in carrying out such design of robbing the said deceased."

After the preparation of the instructions, the court gave the defendant an opportunity to take exceptions, and the defendant, through his attorney, made the following statement:

"Mr. Briscoe: May it please the Court. The Defendant excepts to any reference in the instructions to murder in the second degree or murder in the first degree for the reason that there is no evidence before the Court upon which a verdict of murder in any degree might be based. The Defendant excepts to Instruction No. 5 particularly that part of the second paragraph reading, 'or which was committed in the perpetration of, or an attempt to perpetrate any felony', for the reason that there is no evidence before the Court to show that the fatal blow was struck by the Defendant in the perpetration of, or in an attempt to perpetrate any felony. That is all at this time."

The above is the only exception or attempt at an exception which appears in the record. It would thus appear that this case falls squarely within the rule of this court announced in State v. Compton, 57 N.M. 227, 257 P.2d 915, and that defendant has waived any claim of error in the instructions other than those stated.

■ The defendant is in the unenviable position of objecting to instructions as to first and second degree murder, even though he himself asked the court to give the instruction hereinbefore set out as to first degree murder. A party litigant can certainly not with one hand proffer a requested instruction on one theory of the case and on the other hand contend that the court should not have given the same.

■ In any event, State v. Compton, supra, answers this contention, and in the very recent case of State v. Baize, 64 N.M. 168, 326 P.2d 367, 368, this court stated as follows:

"We have held time and again a defendant must call the attention of a trial court to any claimed error in the instructions by appropriate objection before he may obtain a reversal on account of such error."

■ With respect to the defendant's second contention that instructions as to second degree murder and voluntary manslaughter should not have been given to

the jury, there should be no argument. This has been answered specifically in State v. Garcia, 61 N.M. 291, 299 P.2d 467, 471, wherein the defendant claimed error by reason of the submission to the jury of the issue of voluntary manslaughter whereas he was convicted of second degree murder. The court succinctly disposed of this contention, as follows:

"The defendant also claims error was committed in submitting the issue of voluntary manslaughter to the jury. He was not convicted of manslaughter and hence may not complain of the instruction. (Citations)."

See, also, State v. Horton, 57 N.M. 257, 258 P.2d 371, and State v. Garcia, 57 N.M. 665, 262 P.2d 233.

Actually, the error, if such there was, on the part of the trial court in giving the so-called extra instructions as to common law murder and manslaughter could in no wise prejudice the defendant, and any prejudice that might have arisen therefrom would be prejudicial to the State. The defendant stood only to gain from the giving of instructions which placed even a greater burden on the State than in an ordinary felony murder case.

The defendant also contends that there is a lack of substantial and competent evidence upon which a conviction could be based. We have carefully examined the record and feel that there is ample evidence, factual and circumstantial, upon which the jury would be fully warranted in finding the defendant guilty as charged.

Defendant lastly contends that this court should invoke the doctrine of fundamental error. Let it suffice to say that we do not believe that there is any prejudicial error as against the defendant in this case, certainly no fundamental error.

During the oral arguments of this case, the question was raised by counsel although not covered in either of the briefs, relating to the venue of the case, on the theory that due to the fact that the deceased died in Texas, there was no jurisdiction in the district court of Quay County, even though the blow was found to have been struck there. We do not believe that this merits any response, except to say that the venue was proper in Quay County and that the provisions of § 41–8–1, New Mexico Statutes 1953 Annotated, apply.

Counsel who presented this appeal was acting under court appointment and is to be complimented for his able presentation of the matter.

In view of what has been said, the judgment will be affirmed, and it is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SADLER, J., not participating.